UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MONTPELIER US INSURANCE | : | CIVIL ACTION NO. |
| COMPANY, | : | 3:12-CV-01457 (VLB) |
|     PLAINTIFF, | : | |
| | : | |
|     v. | : | |
| | : | |
| BOKU LLC, ERIC JENNINGS, | : | |
| RENATA ZAK, ENRIQUE FIGUEROA, | : | |
|     DEFENDANTS. | : | MARCH 24, 2014 |

MEMORANDUM OF DECISION GRANTING PLAINTIFF INSURER'S MOTION FOR
SUMMARY JUDGMENT [Dkt. #22]

I.     **Introduction**

The Plaintiff, Montpelier US Insurance Co. ("Montpelier"), brings this declaratory judgment action against Defendants Boku LLC ("Boku"), Renata Zak, Enrique Figueroa, and Eric Jennings, seeking an order declaring that they have no duty to defend Boku or its agents in a civil action proceeding in Connecticut Superior Court. Montpelier has moved for summary judgment pursuant to Fed. R. Civ. P. 56, asserting that there are no genuine issues of material fact in dispute and that the claims may be decided as a matter of law. Defendant Eric Jennings opposes. For the reasons that follow, the Plaintiff's Motion for Summary Judgment is GRANTED.

II.     **Factual Background**

In May 2011, Eric Jennings commenced suit against Boku, Zak, Figueroa, and Lamond, LLC (a non-party to this action) in the Connecticut Superior Court,

Judicial District of New Haven, captioned *Eric Jennings v. Boku, LLC, et al*, NNH-CV-11-6020738-S (the "Jennings Complaint").  [Dkt. 24, P's 56(a)1 Stmnt. #6; dkt. 24-2, Jennings Compl.].  The Jennings Complaint concerns an event that occurred at Boku Restaurant & Bar located at 481-483 Campbell Avenue, West Haven, Connecticut.  Renata Zak and Enrique Figueroa were the backers and/or permittees of the establishment.  [Dkt. 24-2, Jennings Compl. First Count ¶2, Third Count ¶1, Fourth Count ¶1].  It alleges that "during the evening of January 22, 2011 and the early morning hours of January 23, 2011, Hugh Suggs, Robert Gallishaw and [ ] Eric Jennings, were patrons at Boku Restaurant & Bar where alcoholic beverages were sold and served."  [Dkt. 24-2, Jennings Compl. First Count ¶3; dkt. 24, P's 56(a)1 Stmnt. #8].  Further, "agents and/or employees of Boku, LLC served alcoholic beverages to Hugh Suggs and Robert Gallishaw while each was intoxicated, in violation of Conn. Gen. Stat. § 30-102."  [Dkt. 24-2, Jennings Compl. First Count ¶4; dkt. 24, P's 56(a)1 Stmnt. #8].  The Jennings Complaint then alleges that "[i]n the early morning hours of January 23, 2011, as a result of their intoxication … Hugh Suggs and Robert Gallishaw shot [ ] Eric Jennings," repeatedly causing injuries including multiple gunshot wounds, liver laceration, right anterior-superior iliac spine fracture, right apical pneumothorax, and mental and physical pain and suffering.  [Dkt. 24-2, Jennings Compl. First Count ¶¶5-6; dkt. 24, P's 56(a)1 Stmnt. #9].

The First Count of the Jennings Complaint is directed against Boku and alleges Dram Shop liability.  Specifically, it alleges that agents and/or employees of Boku Restaurant & Bar served alcoholic beverages to Suggs and Gallishaw

while each was intoxicated in violation of Conn. Gen. Stat. § 30-102 and that, as a result of their intoxication, Suggs and Gallishaw shot Eric Jennings, causing him injury.  [Dkt. 24, P's 56(a)1 Stmnt. #10].  The Third and Fourth Counts allege identical Dram Shop Liability against Renata Zak and Enrique Figueroa, respectively, as backers and/or permittees of Boku Restaurant & Bar.  [Dkt. 24-2, Jennings Compl. Third and Fourth Counts; dkt. 24, P's 56(a)1 Stmnt. #12].

The Fifth Count of the Jennings Complaint is a negligence claim against Boku.  [Dkt. 24-2, Jennings Compl. Fifth Count ¶¶5-6; dkt. 24, P's 56(a)1 Stmnt. #13].  This Count specifically alleges that Boku, through its agents or employees, was negligent in causing Jennings' injuries in one or more of the following ways:

> a. They failed to eject Hugh Suggs and Robert Gallishaw from the establishment when they knew or should have known that they posed a danger to other patrons, including [Jennings].
>
> b. They failed to have adequate security in place to properly protect its patrons, including [Jennings].
>
> c. They failed to act in a timely and proper manner to protect their patrons, including [Jennings].

[Dkt. 24-2, Jennings Compl. Fifth Count ¶5; dkt. 24, P's 56(a)1 Stmnt. #13].  Counts Two and Six are Dram Shop and Negligence counts against Lamond, LLC, which is not a party to this action.  [Dkt. 24, P's 56(a)1 Stmnt. ##11, 14].

Prior to the incident giving rise to the Jennings Complaint, Montpelier issued a Commercial General Liability Insurance policy to Boku, LLC, bearing policy number MP0006002000336 (the "Policy") with effective dates from May 1, 2010 to May 1, 2011.  [Dkt. 24-1, Policy, ECF p. 5; dkt. 24 #1].  The Policy provides, in relevant part:

3

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

> **a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.**

> **\* \* \***

> **b.  This insurance applies to "bodily injury" and "property damage" only if:**

> > **(1) The "bodily injury" or "property damage" is caused by an "occurrence" …**

[Dkt. 24-1, Policy, ECF p. 35; dkt. 24 #2].  The Policy also provides, in pertinent part:

**SECTION V – DEFINITIONS**

**\* \* \***

**3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.**

**\* \* \***

**13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**

4

**[Dkt. 24-1, Policy, ECF pp. 46, 48; dkt. 24 #3].  The Policy included a Liquor Liability Coverage Form which provided, in relevant part:**

> **SECTION I — LIQUOR LIABILITY COVERAGE**
>
> > **1. Insuring Agreement**
> >
> > > **a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result.**

**[Dkt. 24-1, Policy, ECF p. 61; dkt. 24 #4].  The following exclusion appears in both the Commercial General Liability Coverage Form and the Liquor Liability Coverage Form:**

> > **2. Exclusions**
> >
> > **This insurance does not apply to:**
> >
> > **a. Expected Or Intended Injury**
> >
> > > **"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.**

**[Dkt. 24-1, Policy, ECF pp. 36, 51].  Lastly, the Policy contains, among others, the following exclusion:**

> **ASSAULT AND BATTERY EXCLUSION**

**5**

> **This policy does not apply to "bodily injury", "personal injury"
> or "property damage" arising out of assault and/or battery or
> out of any act or omission in connection with the prevention or
> suppression of such acts, including the failure to warn, train or
> supervise, whether caused by or at the instigation or direction
> of the Insured, his employees, patrons or any other person.**

[Dkt. 24-1, Policy, ECF p. 20; dkt. 24 #5].

On October 12, 2012 Montpelier filed the instant declaratory judgment action against Boku, Zak, Figueroa, and Jennings, seeking a declaration that it does not have a duty to defend or indemnify Boku, Zak, or Figueroa under the Policy for the claims asserted against them in the underlying civil action.  [Dkt. 1, Compl.].

    III.    <u>Legal Standards</u>

        a.   <u>Summary Judgment</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party,

summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

> b.  <u>Insurance Contract Interpretation and the Duty to Defend</u>

Additional legal standards apply in ruling on an insurer's motion for summary judgment regarding its duty to defend under an insurance policy.  In determining the meaning of the terms of an insurance policy, courts are guided by various "well established principles" that also govern the interpretation of

contracts in general.  *Cmty. Action for Greater Middlesex Cnty., Inc. v. Am. Alliance Ins. Co.*, 254 Conn. 387, 399 (2000).  The interpretation of an insurance policy involves a "determination of the intent of the parties as expressed by the language of the policy."  *Id.*

> The determinative question is the intent of the parties, that is, what coverage the ... [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy.... It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy.... The policy words must be accorded their natural and ordinary meaning ... [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy.... A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous.... The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous.

*Id.*  In other words, "If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning."  *New London Cnty. Mut. Ins. Co. v. Bialobrodec*, 137 Conn. App. 474, 478 (2012) (internal quotation marks and citation omitted).  This rule of construction also extends to exclusion clauses.  *Id.*

"The question of whether an insurer has a duty to defend its insured is purely a question of law.... In construing the duty to defend as expressed in an insurance policy, [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the

injury within the coverage." *Id.* at 478-79.  *See also Elec. Ins. Castrovinci*, No. 3:02cv1706(WWE), 2003 WL 23109149, at *3 (D. Conn. Dec. 10, 2003) (citing *Hansen v. Ohio Cas. Ins. Co.*, 239 Conn. 537, 542 (1996)) (same).  Accordingly, "[i]t necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint." *Bialobrodec*, 137 Conn. App. at 479; *see also Truck Ins. Exch. v. Mager*, No. 3:06cv1058(WWE), 2007 WL 3119531, at *2 (D. Conn. Oct. 22, 2007) ("The facts alleged in the underlying complaint determine whether an insurer is obligated to defend or indemnify.") (citing *Flint v. Universal Mach. Co.*, 238 Conn. 637, 646 (1996)).  "The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability." *DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 687 (2004).

"[T]o prevail on its own motion for summary judgment for a declaratory judgment that it has no duty to defend in the underlying action, the insurer must establish that there is no genuine issue of material fact either that no allegation of the underlying complaint falls even possibly within the scope of the insuring agreement or, even if it might, that any claim based on such an allegation is excluded from coverage under an applicable policy exclusion." *Bialobrodec*, 137 Conn. App. at 479 (internal quotation marks and citation omitted).  An insurer is "only entitled to prevail under a policy exclusion if the allegations of the complaint clearly and unambiguously establish the applicability of the exclusion

to each and every claim for which there might otherwise be coverage under the policy." *Id.*

Moreover, "the duty to defend is considerably broader than the duty to indemnify." *DaCruz,* 268 Conn. at 687. "In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." *Id.* at 688 (internal quotation marks and citations omitted). "Thus, the duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage, whereas the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct actually was covered by the policy." *Id.* (citations and internal quotation marks omitted). Importantly, "[b]ecause the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify." *Id.* (citations and internal quotation marks omitted).

IV.   <u>Analysis</u>

Montpelier contends that the Policy clearly and unambiguously excludes, pursuant to two separate Policy terms, coverage for the shooting incident that caused Mr. Jennings' injuries. Mr. Jennings counters that there are various ambiguities within the Policy as to how and when coverage applies such that Montpelier must defend and indemnify Boku in the underlying civil action.

a.   <u>"Occurrence" Under the Policy</u>

Montpelier first asserts that the Jennings Complaint does not allege facts amounting to an "occurrence" such that coverage under the Policy would be triggered, because the shooting that caused Jennings' injuries was not accidental but intentional.  Jennings has not specifically addressed this argument.

The Policy defines an "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Because an occurrence is an "accident" it necessarily means that to be an "occurrence," the action cannot be intended.  Indeed other courts have held that "[w]here the terms of the policy provide that coverage is triggered by an 'occurrence' that is defined as an 'accident,' coverage does not extend to an insured's intentional torts."  *Truck Ins. Exch. v. Spada, Yering*, 3:06CV1060(AVC), 2007 WL 2071629, at *3 (D. Conn. July 16, 2007); *see also Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 459 (D. Conn. 2010) ("The true basis for the action is Mara's many intentional acts of intimidation and harassment.  These acts were not by any means accidental, i.e., 'occurrences' as defined in the policy.").  The Connecticut Supreme Court has also held that the "term 'accident' is to be construed in its ordinary meaning of an 'unexpected happening.'"  *Commercial Contractors Corp. v. Am. Ins. Co.*, 152 Conn. 31, 42 (1964).  Therefore, "occurrence" as defined in the Policy does not include intentional torts or other intended actions.

The Jennings Complaint does not allege sufficient facts from which this Court can conclude whether the shootings were accidental or intentional.  The complaint alleges that "agents and/or employees of Boku, LLC served alcoholic

beverages to Hugh Suggs and Robert Gallishaw while each was intoxicated …"
and that "… as a result of their intoxication … Hugh Suggs and Robert Gallishaw
shot the plaintiff, Eric Jennings," causing his injuries, including "multiple"
gunshot wounds.  [Dkt. 24-2, Jennings Compl. First Count ¶¶4, 5; Third Count
¶¶3, 4; Fourth Count ¶¶3, 4; Fifth Count ¶4].  While it may indeed be the case that
Suggs and/or Gallishaw shot Jennings intentionally (and indeed Jennings does
not deny that the shooting was intentional), and while it is difficult to understand
how such an incident could be accidental, the underlying complaint is silent as to
whether the shooting was intentional or reckless.  As "[t]he question of whether
an insurer has a duty to defend its insured is purely a question of law, which is to
be determined by comparing the allegations of [the] complaint with the terms of
the insurance policy," the Court cannot conclude that the shooting that caused
Jennings' injuries was intentional.[1]  *Wetland v. Am. Equity Ins. Co.*, 267 Conn. 592
n.7 (2004); *see also Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760
(2013) (a liability insurer has a duty to defend its insured in a pending lawsuit if
the pleadings allege a covered occurrence, even though facts outside the four

---

[1] Although it would be improper for the Court to consider such extraneous
evidence as it falls outside the bounds of the underlying complaint, the Court
notes that Jennings has submitted two affidavits in support of his opposition to
the Motion for Summary Judgment which appear to concede that the shooting
was intentional.  In his own affidavit, Eric Jennings affirms that Suggs and
Gallishaw approached him on the dance floor at Boku, threatened him repeatedly,
acted aggressively, followed Jennings and his brother outside the restaurant,
"started to threaten us and came after us with a knife," and shot Mr. Jennings five
times.  [Dkt. 36, E. Jennings. Aff. ¶¶5 – 10].  The second affidavit, from Jennings'
brother, is nearly identical.  If the Court *could* consider this evidence in deciding
this motion – which it cannot – Jennings' affidavit would render the incident in
question outside the scope of an "occurrence" as defined in the Policy, as
Jennings clearly alleges that both the shooting and Suggs' and Gallishaw's
actions leading up the shooting were intentional.

corners of those pleadings indicate that the claim may be meritless or not covered); *Bialobrodec*, 137 Conn. App. 474 (when contending in a declaratory judgment action that it has no duty to defend an insured in an underlying action, the insurer is necessarily limited to the provisions of the subject insurance policy and the allegations of the underlying complaint); *Misiti, LLC v. Travelers Property Cas. Co. of Am.*, 308 Conn. 146 (2013) (the question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of the complaint with the terms of the insurance policy).  While there is evidence on the record contending that the shootings were intentional, that evidence could be refuted and rejected by the trier of fact at trial. Constrained by the vagueness of the complaint, the Court finds that the shooting could thus *possibly* fall within the scope of an "occurrence" as defined by the Policy.

### b.  Assault and Battery Exclusion

Montpelier further contends that the Assault and Battery Exclusion, which modifies the whole Policy, including the Liquor Liability Coverage Form, unambiguously precludes coverage for the shooting that caused Jennings' injuries.  Jennings argues that ambiguity exists between the Assault and Battery Exclusion and the Expected or Intended Injury Exclusion, thus forcing Montpelier to defend Boku in the underlying action.

As with the body of an insurance contract, if the terms of an exclusion are "clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning."

*New London Cnty. Mut. Ins. Co. v. Bialobrodec*, 137 Conn. App. 474, 478 (2012)

(internal quotation marks and citation omitted).  The Assault and Battery

Exclusion appears with six other exclusions on a two-page endorsement entitled,

in bold font, "Endorsement – Additional Exclusions and Provisions Liability

Insurance."  [Dkt. 24-1, Policy, ECF p.20].  Above this title, in all capital letters, the

endorsement proclaims that "THIS ENDORSEMENT CHANGES THE POLICY.

PLEASE READ IT CAREFULLY."  It proceeds to state: "[i]n consideration of the

premium charged, it is understood and agreed that the following shall apply to

this policy: …"  [*Id.*].  The Assault and Battery Exclusion reads:

> **ASSAULT AND BATTERY EXCLUSION**
>
> **This policy does not apply to "bodily injury", "personal injury"
> or "property damage" arising out of assault and/or battery or
> out of any act or omission in connection with the prevention or
> suppression of such acts, including the failure to warn, train or
> supervise, whether caused by or at the instigation or direction
> of the Insured, his employees, patrons or any other person.**

[*Id.*].  Giving these words their natural and ordinary meaning, the Court concludes

that the parties intended to exclude coverage for damages arising from any act of

"assault and/or battery," and any acts or omissions relating to the prevention or

suppression of such assaults and/or batteries.  Such acts or omissions falling

within this exclusion may include, but are not limited to, the failure to warn, train,

or supervise.  Further, the exclusion endorsement clearly states that "THIS

EXCLUSION CHANGES THE POLICY" and warns the insured that, in

consideration of the premium charged, the enumerated exclusions "shall apply to

this policy."  Thus, a reasonable insured would understand that damages

resulting from assault and battery or acts or omissions connected to an assault or battery would not be covered by the Policy.

The Connecticut Supreme Court interpreted a nearly identical assault and battery exclusion in *Kelly v. Figueiredo*, 223 Conn. 31 (1992). The plaintiff in *Kelly* sued under Connecticut's dram shop act, alleging that he sustained injuries when he was struck and stabbed by another bar patron to whom the insured had sold alcohol while that patron was intoxicated. The issue before the Connecticut Supreme Court was "whether an exclusion clause in a liquor seller liability insurance policy is sufficiently ambiguous so that it should be read to provide coverage for damages caused by an assault and battery by an intoxicated patron." *Id.* at 31. The exclusion at issue provided that "the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person." *Id.* at 31. The Court first rejected the insured's argument that the exclusion excluded coverage *not* for generic assaults and batteries like the one at issue in that case, but *only* for assaults and batteries taking place "in connection with the prevention or suppression of" *other* assaults and batteries, holding that the words "out of" before both "assault and battery" and "any act or omission" foreclosed the insured's argument. *Id.* at 35. Despite the insured's arguments to the contrary, the Court then held that the exclusion clause was not ambiguous, that the "words at issue do not have multiple definitions," and that the clause "was intended to exclude all assaults and

batteries from coverage." *Id*. at 37.  The Court lastly held that the exclusion clause did not violate the public policy underlying Connecticut's dram shop Act. *Id*. at 40.  The Court ultimately concluded that the assault and battery exclusion "unambiguously relieve[d]" the insurer of any obligation to defend or indemnify the insured against the plaintiff's dram shop claim.  *Id*. at 36.

The Connecticut Appellate Court has likewise addressed an assault and battery exclusion similar to that in *Kelly* and to the exclusion in this case in *Clinch v. Generali-U.S. Branch*, 110 Conn. App. 29, 40 (2008) aff'd, 293 Conn. 774 (2009).  The plaintiff in *Clinch* had been a customer at a restaurant that carried a general liability insurance policy and a liquor liability insurance policy.  *Id*. at 31. While at the restaurant, the plaintiff was confronted by three men who were under the influence of alcohol, one of whom struck and hit the plaintiff.  The plaintiff and the three men were ejected from the restaurant but their altercation continued outdoors where the plaintiff was struck in the back of the head, causing him to fall, strike the ground, and suffer further injuries.  *Id*.  The plaintiff brought an underlying action against the restaurant and the three men, alleging negligence and claims of wilful, wanton, and reckless conduct, and he won judgment in his favor against the restaurant and one of its employees.  *Id*.  The plaintiff then brought the *Clinch* action against the insurer for its refusal to defend the insured in the underlying action.  *Id*.  The assault and battery provision in the general policy provided:

> In consideration of the reduced premium charged, it is
> understood that this insurance does not apply to bodily injury,
> personal injury or property damage arising out of assault or

> **battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person. . .   Furthermore, there is no coverage for assault and/ or battery claim against the insured if the claim is based on the alleged failure of the insured to protect individuals whether or not patrons, or involves the negligent selection, training, employment, supervision or control of any individual**

*Id.* at 36.  The Liquor Liability policy contained nearly identical language.  The Appellate Court held that this policy language "clearly sets forth exclusions for injuries arising from assault or battery or from any acts or omissions connected to suppressing or preventing such acts of assault or battery."  *Id.* at 36.  The Appellate Court further concluded that the plaintiff's thirteen counts of negligence against the restaurant were "tied inextricably by the language of the complaint to assault and battery" and therefore "the only causes reasonably construed from the plaintiff's complaint, that is to say, that do not unreasonably contort the meaning of the language of the complaint, are for injury arising out of assault and battery."  Thus, the plaintiff's negligence claims against the restaurant were likewise excluded pursuant to the assault and battery clause.  *Id.* at 39.

The assault and battery exclusion at issue here is nearly identical to that analyzed by the Connecticut Supreme Court in *Kelly* and this Court can find no reason to depart from *Kelly*'s or *Clinch*'s holdings that such exclusions are unambiguous.  First, the clause clearly forecloses insurer liability for bodily and personal injury arising out of an assault and/or battery, *and* for bodily and personal injury arising out of "any act or omission in connection with the

prevention or suppression of such acts." Thus, both the assault on Jennings and any acts or omissions by Boku or its agents, employees, or patrons are excluded from the Policy's coverage. Such acts or omissions necessarily encompass the allegations of negligence and dram shop liability in the Jennings Complaint, as they did in *Kelly*. Moreover, "[i]n this state an actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently." *Clinch*, 110 Conn. App. at 40 (citing *Markey v. Santangelo*, 195 Conn. 76, 78 (1985)). "Thus, intentional conduct is not required for an assault and battery." *Id*. In *Clinch v. Generali-U.S. Branch*, the plaintiff specifically argued that the allegations in the underlying complaint did not establish the requisite "intentional" conduct necessary to constitute an assault and battery within the meaning of the policy's exclusion. In rejecting this argument, the Appellate Court concluded both that intentional conduct was not a prerequisite for assault or battery, and that "as in *Kelly*, it was the intent of the parties, the defendant and the insured, to exclude all assaults and batteries from coverage." 110 Conn. App. at 40.

Consequently, disguising claims arising out of an assault and/or battery as claims of negligence – as Jennings has done here as against Boku, Zak, and Figueroa – does not defeat an unambiguous assault and battery exclusion that applies to the shooting incident in this case. *See also Hermitage Ins. Co. v. Sportsmen's Athletic Club*, 578 F. Supp. 2d 399, 404 (D. Conn. 2008) (VLB) (holding that, "[w]hile the underlying complaints may be cloaked in negligence,

they indisputably arise out of the assault and/or battery, namely the shooting incident," and thus are precluded by the assault and battery exclusion in the policy).  In addition, Suggs' and Gallishaw's intent with regard to the shooting is irrelevant, as an assault and battery does not require intentional conduct.  All liability asserted against Boku in the underlying action stemming from the injuries sustained when Jennings was shot multiple times by Suggs and Gallishaw are excluded from coverage under the plain and unambiguous terms of this exclusion.

Third, assault and battery exclusions have been extensively litigated in courts in Connecticut and are routinely held to be unambiguous and applied to preclude coverage of negligence claims connected to assaults or batteries arising from circumstances similar to those at issue in this case.  *See Kelly v. Figueiredo*, 223 Conn. 31 (1992); *Clinch v. Generali-U.S. Branch*, 110 Conn. App. 29, 40 (2008) aff'd, 293 Conn. 774 (2009); *Colony Ins. Co. v. Jack A. Halprin, Inc.*, 3:10-CV-1059 CSH, 2012 WL 2859085 (D. Conn. July 11, 2012) (insurer had no duty to defend or indemnify insured restaurant against claims of negligence arising from deaths of patrons who were shot and killed in insured restaurant's parking lot, where such claims were excluded pursuant to clear and unambiguous assault and battery clause excluding liability for "damages or expenses due to 'bodily injury, 'property damage' or 'personal and advertising injury' arising out of or resulting from: (1) Assault and Battery committed by any person; (2) The failure to suppress or prevent assault and battery by any person; (3) The failure to provide an environment safe from assault and battery or failure to warn of the

dangers of the environment which could contribute to assault and battery; (4) The negligent hiring, supervision, or training of any person; (5) The use of any force to protect persons or property whether or not the 'bodily injury' or 'property damage' was intended from the standpoint of the insured or committed by or at the direction of the insured."); *CX Re Ins. Co., Ltd. v. Melissa's Cafe, LLC*, 3:06-CV-627(CFD), 2008 WL 2951816 (D. Conn. July 31, 2008) (no duty to indemnify for claims of actual assault by a café patron and negligent conduct by the café, where assault and battery exclusion excluded coverage for assaults and batteries and/or for any act or omission to act in connection with the prevention of suppression of any assault or battery; further recognizing that negligent conduct resulting in physical injury may fall within a policy exclusion concerning assaults); *Jones v. Penn-Am. Ins. Co.*, CV054011912S, 2007 WL 127691 (Conn. Super. Ct. Jan. 4, 2007) (granting summary judgment for insurer in subrogation action brought by patron who was stabbed by café bouncer where underlying action contained claims of negligence in supervision and hiring; "[t]he terms and scope of the insurance varies with the premium costs. This kind of [assault and battery] exclusion in an insurance policy has not been held to be violative of public policy and plaintiff has not raised a valid question of material fact with respect thereto."); *Salza v. Cellar*, CV00375600S, 2002 WL 1331985 (Conn. Super. Ct. May 20, 2002) (assault and battery exclusion identical to that in *Kelly* "applies to assaults and batteries caused by intentional, reckless or negligent conduct," as well as to the prevention or suppression of such assaults or batteries, thereby relieving insurer of duty to defend against claims of insured's negligence

stemming from bartender's alleged beating of patron); *AXA Global Risks U.S. Ins.*
*Co. v. S.G.S., Inc.*, CV990337096S, 2000 WL 1861833 (Conn. Super. Ct. Nov. 15,
2000) (no duty to defend or indemnify insured café against patron's negligence
claims resulting from patron's assault by another patron where policy contained
assault and battery exclusion that also excluded "[a]llegations of negligent act or
omission by or on behalf of the insured in connection with hiring, retention or
control of employees, supervision or prevention or suppression of such assault
and battery").

Defendant Jennings contends, despite the foregoing, that the Policy and its
exclusions are ambiguous in several ways, thus mandating that Montpelier
defend the insured.  None of Jennings' arguments is credible.

Jennings' first argument relates to the Expected or Intended Injury
Exclusion, which appears in both the Commercial General Liability Coverage
Form and the Liquor Liability Coverage Form, and states:

> This insurance does not apply to:
>
> a. Expected Or Intended Injury
>
> > "Bodily injury" or "property damage" expected or
> > intended from the standpoint of the insured. This
> > exclusion does not apply to "bodily injury" resulting
> > from the use of reasonable force to protect persons or
> > property.

[Dkt. 24-1, Policy, ECF pp. 36, 51].  Jennings contends that the second sentence
of this clause, which states that the exclusion does not apply to bodily injury
resulting from the use of reasonable force to protect persons or property, "could
be interpreted to mean that unintentional, accidental or negligent actions by or on

behalf of bar agents/employees and/or security representatives are covered under the policy," and further that "coverage does exist when an employee unintentionally injures someone."  [Dkt. 32, D's Opp. to MSJ, pp.  9-10/24].  This exclusion, when read in isolation, excepts from the exclusion "the use of reasonable force to protect persons or property" which causes bodily injury.  However, Jennings' reference to this exclusion in this manner is irrelevant, as there is no allegation whatsoever in the Jennings Complaint that any person used "reasonable force to protect persons or property," or that any bar agent, employee, or security representative engaged in any *act* at all relating to the protection of persons or property or to the use of reasonable force.  Indeed, there is no allegation that any such person used *any* force, regardless of its reasonableness.  To the extent that Jennings is suggesting that this sentence must be read to include acts *unrelated* to the use of reasonable force to protect persons or property, that construction is entirely unfounded based on the plain language of this exclusion.  Moreover, the *use* of reasonable force cannot mean the *failure* to use reasonable force, as such a construction would be contrary to the plain meanings of the words of the exclusion.  Here, the underlying Jennings Complaint specifically connects Boku's alleged negligence to its *failures* to act; that Complaint alleges that Boku "*failed* to eject" Suggs and Gallishaw, that it "*failed* to have adequate security in place," and that it "*failed* to act in a timely and proper manner" to protect patrons.  Jennings' allegations are premised on Boku's *failure to act* to reasonably protect its patrons; not on any action Boku

*took* to protect its patrons.  Thus, Jennings' argument is entirely inapposite and this clause is not ambiguous.

Jennings further argues that the Policy is ambiguous because the Expected Or Intended Injury Exclusion deems that the use of reasonable force to protect persons or property is not excluded from coverage, while the Assault and Battery Exclusion dictates that any bodily injury or property damage arising out of an assault and/or battery is excluded from coverage.  Jennings contends that because these clauses cover "the same behavior" but provide different results, the Policy is ambiguous.  [Dkt. 32, D's Opp. to MSJ, pp. 11/24].  Jennings fails to note, however, that the purpose of an exclusion is exactly that; to exclude coverage where coverage might otherwise exist under the Policy.  His argument must fail.

The Expected Or Intended Injury Exclusion appears in both the Commercial General Liability Coverage Form and the Liquor Liability Coverage Form, both of which set forth the basic terms of liability.  Excluded from the Exclusion is the use of force to protect persons or property.  Both of these forms also include the following identical warning, featured as the first and second sentences of both forms:

> Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

[Dkt. 24-1, Policy, ECF pp. 35, 61].  The Assault and Battery Exclusion, as noted previously, appears in a separate endorsement featuring six exclusions and titled, in bold font, "Endorsement – Additional Exclusions and Provisions Liability

**23**

Insurance."  Above this title, in all capital letters, the endorsement states: "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  It also states, in normal font and below the title, "[i]n consideration of the premium charged, it is understood and agreed that the following [exclusions] shall apply to this policy," and proceeds to list the six additional exclusions.  It is thus readily apparent from the plain language of the policy and of the Endorsement in which the Assault and Battery Exclusion is included that this exclusion modifies the rest of the Policy, including the terms enumerated in the bodies of the General Liability Coverage and the Liquor Liability Coverage Forms.  In consideration of the premium Boku paid, it received General and Liquor Liability coverage that contained six additional exclusions, including the Assault and Battery Exclusion. This Exclusion does not render the Policy ambiguous; rather, it modifies the exclusions set forth in the Liability Forms.

Lastly, Jennings argues that the Expected Or Intended Injury exclusion renders the Policy ambiguous because "it is entirely unclear" what the exclusion means by injury "expected or intended from the standpoint of the insured."  [Dkt. 32, D's Opp. to MSJ, p. 14/24].  This insight, if indeed it is one, is irrelevant as, first, the meaning of this exclusion does not alter whether an assault or battery is excluded pursuant to the Assault and Battery Exclusion, and second, Montpelier is not disclaiming liability coverage pursuant to the Expected Or Intended Injury exclusion.  The Defendant's argument is irrelevant.

In sum, even if the events giving rise to Jennings' underlying complaint constitute an "occurrence" under the Policy, the Policy's Assault and Battery

**24**

exclusion precludes coverage for potential liability as to Jennings' claims in the underlying civil action.  Montpelier therefore has no duty to defend or indemnify the insured.

V.     <u>Conclusion</u>

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED.  The Clerk is directed to enter judgment in favor of the Plaintiff against all Defendants[2] and to close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 24, 2014

---

[2] Default has entered against Defendants Boku, LLC, Renata Zak, and Enrique Figueroa.  *See* docket entries 13, 14, and 15.